**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| ERNEST BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:   2:17-cv-02120-JHE |
| | ) | |
| POSTAL FLEET SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM OPINION[1]

Plaintiff Ernest Brooks ("Brooks") and Defendant Postal Fleet Services, Inc. ("Postal Fleet") jointly move for approval of their settlement agreement, which represents the resolution of a disputed matter under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").   (Doc. 14).   For the reasons set forth below, the court **APPROVES** the parties' settlement.

### I. Background Facts

Brooks, a former Assistant Manager of Postal Fleet, filed this action on December 18, 2017, alleging he was not paid overtime wages for hours worked in excess of forty hours per week, when he was performing the vast majority of work driving hauling trucks.   (Doc. 1).   Brooks alleged that due to his extensive non-management duties he did not qualify for the administrative or professional exemption from overtime under §13(a)(1) of the FLSA. (*Id.*). As relief, Brooks

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.   (Doc. 11).

sought the alleged unpaid back wages, statutory liquidated damages, and attorneys' fees and costs. (*Id.*).

Postal Fleet denies all liability and disputes Brooks' claims on factual and legal basis. (Doc. 7). Postal Fleet maintains that Brooks was exempt from the overtime compensation requirements of the FLSA as a driver of a commercial motor vehicle under the 29 USC §213(b)(1) related to the Motor Carrier Act exemptions. (*See* doc. 14 at 2). Postal Fleet also denies that Brooks was not properly compensated for the time he worked and denies that he is entitled to overtime or any additional compensation or damages. (*See* docs. 7 & 14).

After Brooks filed the Complaint and the parties exchanged FRCP Rule 26(a)(1) Initial Disclosures, the parties engaged in arms-length discussions about the merits of the case. (Doc. 14 at 2). The parties continue to disagree on various factual and legal issues, including the hours Brooks worked, Brooks' job duties, and whether Brooks is exempt from the overtime requirements. (*Id.*). Facts were discovered in preparation to exchange Rule 26 Initial Disclosures that Brooks almost exclusively drove commercial motor vehicles in excess of 10,000 pounds, subjecting Brooks to the exemption from the payment of overtime under the Motor Carrier Act Exemption. (*Id.* at 2-3 citing 29 U.S.C. §213(b)(1)). In light of these discrepancies to the original claim, the uncertainty of their outcome in litigation, the significant time and expense involved in litigating the case through trial, and the difficulties and delays inherent in such litigation, the parties agreed to settle the case, with Postal Fleet to pay a compromised amount of unpaid wages. (*Id.* at 3). On February 20, 2018, the parties executed a Settlement Agreement, (doc. 14-1). (Doc. 14 at 3).

The Settlement Agreement provides for a total payment of $1,000 to Brooks — $1,000.00 for unpaid wages and liquidated damages. Brooks claimed he worked twenty to forty overtime hours per week and that his job consisted primarily of driving a commercial motor vehicle. (Doc. 14 at 3). Postal Fleet provided Brooks with information challenging the number of hours he claimed he worked and information regarding his job duties that evidenced his overtime exempt status under the Motor Carrier Act Exemption. (*Id.* citing 29 U.S.C. §213(b)(1)). In light of that information, and after further discussion between the parties, the parties agreed the total sum of $1000.00 was a fair and reasonable compromise. (*Id.*). Postal Fleet contends its reliance on the Motor Carrier Act Exemption from the payment of overtime was in good faith, and therefore, liquidated damages are disputed; nevertheless, for the purposes of settlement only, the payment of $1000.00 is intended to include liquidated damages. (*Id.* at 3-4).

Additionally, the parties separately negotiated the amount of attorneys' fees and costs Postal Fleet would pay so that Brooks' recovery would not be affected. The parties negotiated $750.00 to cover Brooks' attorneys' fees and $400.50 for costs.

## II. Analysis

If an employee proves his employer violated the FLSA, the employer must remit to the employee all unpaid wages or compensation, liquidated damages in an amount equal to the unpaid wages, a reasonable attorney's fee, and costs. 29 U.S.C. § 216(b). "FLSA provisions are mandatory; the 'provisions are not subject to negotiation or bargaining between employer and employee.'" *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009) (quoting *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982)). "Any amount due that is not in dispute must be paid unequivocally; employers may not extract valuable concessions in

return for payment that is indisputably owed under the FLSA." *Hogan v. Allstate Beverage Co., Inc.*, 821 F. Supp. 2d 1274, 1282 (M.D. Ala. 2011). Consequently, parties may settle an FLSA claim for unpaid wages only if there is a bona fide dispute relating to a material issue concerning the claim.

In *Lynn's Food Stores, Inc. v. United Stat*es, 679 F.2d 1350, 1355 (11th Cir. 1982), the Eleventh Circuit stated there is only one context in which compromises of FLSA back wage or liquidated damage claims may be allowed: a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. The primary focus of a court's inquiry in determining whether to approve an FLSA settlement is to ensure that an employer does not take advantage of its employees in settling their claim for wages and other damages due under the statute. *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 714, 719 (E.D. La. 2008).

### A. Bona Fide Dispute Between the Parties

Here, the parties have a legitimate, bona fide dispute as to the merits of the case; specifically, Brooks alleges Postal Fleet failed to pay his overtime wages for certain hours worked in excess of forty in a work week, and Postal Fleet denied those allegations and raised additional affirmative defenses, including applicable exemptions from the overtime requirements. (Docs. 1 & 7). After exchanging information and discussing the merits of Brooks' claims, the parties continue to disagree as to whether overtime wages are owed to Brooks.

**B. Reasonableness of Settlement Amount**

Additionally, the settlement amount (as set out in the terms above) is an appropriate amount for the disputed unpaid wages and liquidated damages. A general framework for evaluating the fairness and reasonableness of an FLSA compromise includes: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the state of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel. *See Dodd v. Schneider National Carriers*, Case. No. 2:13-CV-01042-JHE (N.D. Ala. Sept. 24, 2014); *Dees v. Hydradry*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010). In reviewing the terms of a proposed settlement, there is a strong presumption in favor of finding that it is fair. *Cotton v. Hinton*, 559 F. 2d 1326, 1331 (5th Cir. 1977). As to factor (1), the parties submit that the settlement amount was reached through fact-based, good faith negotiation, wherein each party recognized weaknesses in its position, strengths in the other's positions, and compromised accordingly to avoid the expense and uncertainty of further litigation. As to factors (2) and (3), the parties reached the settlement after exchanging and evaluating sufficient information pertinent to Brooks' claims to enable the parties to make an informed analysis and assessment of the case. By resolving the case in this fashion, the parties can avoid the extensive expense of further discovery, including deposition discovery, discovery disputes, pretrial requirements, trial preparation, and trial. As to factors (4) and (5), Postal Fleet presented information and a legal argument that was potentially dispositive and lessened the probability of Brooks' success on the merits and narrowed the range of possible range of recovery, including evidence disputing Brooks' claims about his non-exempt

status and the number of overtime hours he worked. Additionally, Brooks would have had to prove willfulness to recover liquidated damages.

As for factor (6), all parties were represented by competent and experienced attorneys who are well versed in this area of the law. Counsel evaluated the merits of the case and the probability of different outcomes with their respective clients. Brooks was included in the negotiations, fully informed of his options, and entered into settlement knowingly and voluntarily as evidenced by his signature affixed to the Settlement Agreement. (*See* doc. 14-1). Thus, the court agrees that the settlement is a fair and reasonable resolution.

## C. Attorney's Fees and Costs

The proposed settlement agreement also contains agreed-upon attorney's fees and costs amount. Brooks' attorney's fees were negotiated separately and at arm's length. (*See* doc. 14). "Where the attorney's fee was agreed upon separately, without regard to the amount paid to the plaintiff, then 'unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.'" *Davis v. The Filta Group, Inc*., 2010 WL 3958701, *2 (M.D. Fla. Sept. 20, 2010) (quoting *Bonetti v. Embarq Mgmt. Co.*, 2009 WL 2371407, *5 (M.D. Fla. Aug. 4, 2009)). Because the parties represent the attorney's fee was separately negotiated, (doc. 14), the court concludes Brooks' recovery was not affected by the amount of the attorneys' fee. The court has considered the amount of the fee and finds it to be reasonable.

## III. Conclusion

The court finds Brooks' FLSA claims represent a bona fide dispute over FLSA provisions,

the parties' settlement is a fair and reasonable resolution of this bona fide dispute, and that the fees/cost award was negotiated separately. Therefore, the parties' Joint Motion for Approval of Settlement (doc. 14) is **GRANTED**, and the settlement is **APPROVED**.   A separate order will be entered.

DONE this 2nd day of March, 2018.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE